HEAVENLY CREATIONS, INC., a corporation, J. B. Promotions, Inc., a corporation, Americana Star Silver Corp., a corporation, and Sam S. Goldstein and Sylvia Goldstein, individually and as copartners trading as Sun Gold Industries and as officers of each of said corporations, Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 106, Docket 28851.

United States Court of Appeals Second Circuit.

Argued Oct. 22, 1964.

Decided Nov. 24, 1964.

Certiorari Denied March 29, 1965.

See 85 S.Ct. 1089.

I. Walton Bader, Bader & Bader, New York City, for petitioners.

Norman L. Holmes, James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Miles J. Brown, Washington, D. C., for respondent.

Before FRIENDLY, KAUFMAN and ANDERSON, Circuit Judges.

PER CURIAM:

Petitioners, who sell a variety of products to distributors and jobbers, house-to-house salesmen, and retailers, for resale to consumers, seek review of an order of the Federal Trade Commission directing them to cease and desist from a number of practices found to violate § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, or § 4 of the Textile Fiber Products Identification Act, 15 U.S.C. § 70b, which requires a statement of the generic name of constituent fibers. Finding petitioners' broadside of attacks to be without basis, we deny the petitions and decree enforcement.

The only arguments that require discussion are those relating to the prohibition of preticketing goods at inflated prices. Petitioners' reliance on our having set such an order aside in Rayex Corp. v. FTC, 317 F.2d 290 (2 Cir. 1963), ignores all that we said in condemnation of the practice, 317 F.2d at 292, and the fact that the decision turned on lack of evidence of such preticketing, 317 F.2d at 294, which here was admitted. Petitioners' offer to prove a custom of fictitious pricing in the retail trade was properly refused. A practice does not "cease to be * * * [unfair] because the falsity of the * * * representation has become so well known to the trade that dealers, as distinguished from consumers, are no longer deceived." FTC v. Winsted Hosiery Co., 258 U.S. 483, 494, 42 S.Ct. 384, 386, 66 L.Ed. 729 (1922). Petitioners did not attempt to and in the nature of things could not prove that no appreciable number of consumers were deceived by a practice so inherently and purposely deceptive; when this court yielded to an argument like petitioners' although on a stronger showing, it was quickly set right. FTC v. Standard Educ. Soc'y, 302 U.S. 112, 58 S.Ct. 113, 82

L.Ed. 141 (1937), reversing in part 86 F.2d 692, 695–96 (2 Cir. 1936). Heeding that lesson, we have since consistently held that "if the Commission, having discretion to deal with these matters, thinks it best to insist upon a form of advertising clear enough so that, in the words of the prophet Isaiah, 'wayfaring men, though fools, shall not err therein,' it is not for the courts to revise their judgment." General Motors Corp. v. FTC, 114 F.2d 33, 36 (2 Cir. 1940), cert. denied, 312 U.S. 682, 61 S.Ct. 550, 85 L.Ed. 1120 (1941).

█ In another aspect of this argument petitioners complain that the Commission has taken no action against other fictitious preticketing, especially in the automobile industry. But this is not at all a case where the Commission has announced a general policy giving sellers a certain degree of latitude and then has proceeded invidiously against a particular one, see Mary Carter Paint Co. v. FTC, 333 F.2d 654 (5 Cir. 1964), especially the concurring opinion of Judge Brown at 660. The Commission's endeavors to prevent fictitious pricing are attested by the multitude of proceedings it has brought to that end and by its Guides Against Deceptive Pricing, 29 Fed.Reg. 178 (1964), adding 16 C.F.R. § 14.10 (1964). Since complete enforcement coverage is impossible as to so widespread a practice, "the Commission alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically." Moog Indus. Inc. v. FTC, 355 U.S. 411, 413, 78 S.Ct. 377, 379, 2 L.Ed.2d 370 (1958). Nothing in the Automobile Information Disclosure Act, 15 U.S.C. §§ 1231–33, sanctions fictitious or deceptive preticketing in that industry, see Baltimore Luggage Co. v. FTC, 296 F.2d 608, 612 (4 Cir. 1961), cert. denied, 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 17 (1962).

█ Petitioners' next objection concerns the Hearing Examiner's refusal to grant an oral request to inspect the Commission's investigative files, which allegedly would have revealed many instances in which consumers were not deceived. But, apart from any other considerations, petitioners did not follow the path prescribed for such relief—a written application, not to an examiner but to the Commission itself, setting forth the interest of the applicant and a description of the materials sought and the purpose for which they would be used. 16 C.F.R. §§ 1.133 and 1.134 (Supp.1964).

█ Finally, petitioners complain that so much of the order as prohibits a preticketed price "that appreciably exceeds the highest price at which substantial sales are made in respondents' trade area" puts them in peril of a contempt proceeding if price-cutting in an area should cause prices to drop below what petitioners had in good faith believed to by the level when they preticketed. It might have been better if the alternative clause in the order either had been combined with the first clause relating to good faith estimates, as is done in the Guides, see 16 C.F.R. § 14.10(c) (7), or had been drafted somewhat more precisely, e. g., "that appreciably exceeds the highest price at which respondents reasonably believed that substantial sales were being made in respondents' trade area at the time of such advertising, dissemination, or distribution." But counsel for the Commission tell us that this is what the order means, stating, "A 'good faith' estimate by petitioners will not be in violation of the order," and the Commission's opinion says its policy is "to interpret all outstanding cease and desist orders against deceptive pricing, whatever the precise form of words employed in the particular order, as if they expressly incorporated the provisions of the newly revised Guides Against Deceptive Pricing." We have become somewhat impatient as to the genuineness of fears that a great agency of government like the Commission will behave in any such literalistic and arbitrary fashion as petitioners suggest. What we said on that score in Vanity Fair Paper Mills, Inc. v. FTC, 311 F.2d 480, 488 (2 Cir.

1962), applies *a fortiori* in the light of the salutary provision for preliminary advice on compliance added in the 1963 revision of the Commission's Rules of Practice, 16 C.F.R. § 3.26(b) (Supp. 1964).

The petitions to review are denied; the Commission may submit a decree.