**UNION BAG–CAMP PAPER CORPORA-TION, a corporation, Plaintiff,**

v.

**The FEDERAL TRADE COMMISSION, Paul Rand Dixon, Chairman, Sigurd Anderson, Philip Elman, A. Everette Mac Intyre, and John J. Reilly, Defendants.**

United States District Court
S. D. New York.
Sept. 2, 1964.

662

Hughes, Hubbard, Blair & Reed, New York City, for plaintiff, Samuel M. Kinney, Jr., Walter C. Taylor, Jr., New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, for defendants, Thomas H. Baer, Eugene R. Anderson, New York City, Harold D. Rhynedance, Jr., Washington, D. C., of counsel.

COOPER, District Judge.

Plaintiff herein is respondent in a proceeding presently before the Federal Trade Commission, entitled "In the Matter of Union Bag-Camp Paper Corporation," FTC Docket No. 7946 (hereinafter called the "Commission proceeding"), alleging violation of Section 7 of the Clayton Act (15 U.S.C. § 18) by reason of certain mergers and acquisitions by plaintiff.

During the Commission proceeding, plaintiff made several applications for issuance by the Commission of special reports pursuant to Section 6(b) of the Federal Trade Commission Act (15 U.S.C. § 46(b), hereinafter called "Section 6(b)"), to obtain information alleged to be necessary for the defense by plaintiff of the charges asserted against it in the Commission proceeding. These applications were denied by defendant, notwithstanding the fact that on two occasions similar reports were issued at the behest of counsel for defendant.

Thus far in the Commission proceedings, defendant has called 50 witnesses during the course of 34 days of hearings and 3,649 pages of record have been taken. Commission counsel have not completed the presentation of their case.

Plaintiff alleges that in denying it access to 6(b) reports, the Commission violated the Administrative Procedure Act (hereinafter "A.P.A.") and the Due Process Clause of the Constitution.

Plaintiff moves here for summary judgment. Defendant cross-moves for summary judgment and for dismissal of the complaint.

JURISDICTION

Jurisdiction rests upon Section 10(e) of the A.P.A. (5 U.S.C. § 1009), and the Judicial Code (28 U.S.C. §§ 1331, 1337). Section 10(e) provides, in part, that

"[E]xcept so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.

\*   \*   \*   \*   \*   \*

"(e) *Scope of review.* So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;   \*   \*   \*."

Plaintiff alleges that under Section 6(b) of the F.T.C. Act and Section 6(c) of the A.P.A., issuance of 6(b) special reports to private litigants is mandatory, and that by its denials of plaintiff's requests for these reports the Commission violated this alleged mandate. Plaintiff

further contends such violation constitutes a denial of due process within the meaning of the Fifth Amendment. (U.S. Const. Amend. V).

■ Section 10, in its entirety, compels us to review the acts here complained of to determine whether there exists facts sufficient to support the jurisdictional criteria of Section 10. Deering Milliken Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961).

Plaintiff complains of "[S]uffering legal wrong because of * * * agency action" (10(a)); that the agency action, in denying the relief is "final" and that "there is no other adequate remedy in any court." (10(c)); that the 6(b) reports were "unlawfully withheld," and that the agency action was "arbitrary, capricious, an abuse of discretion" and "otherwise not in accordance with law" and that it was "contrary to" plaintiff's "constitutional right." (10(e)). If the facts support these allegations, judicial review is certainly proper.

Defendant would relegate plaintiff to review under Section 11 of the Clayton Act (15 U.S.C. § 21), which provides that all review of cease and desist orders shall be heard by the appropriate Court of Appeals. While that section allows the Court of Appeals to order additional evidence to be taken it may only do so if the party "shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the commission * * *."

If we are satisfied that the Commission has violated a statutory mandate here, we will not require plaintiff to wait until it is ordered to cease and desist from violating Section 7 of the Clayton Act before obtaining redress.

Viewing plaintiff's allegations as a two pronged attack on the Commissions' action, we must also consider the due process claim as it relates to our jurisdiction here.

■ Assuming that the denial of 6(b) reports was so violative of plaintiff's

rights as to constitute a fundamental denial of due process, the matter is presently ripe for judicial review. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). The "narrowing" of the holding in Leedom by Boire v. The Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964) does not change this result. Plaintiff is claiming that the agency action was in direct derogation of the alleged statutory command to supply it with 6(b) reports. Clearly, the instant action falls within the ambit of both Leedom and Boire as one involving the interpretation and construction of a statute.

Reliance is also placed on Amos Treat & Co. v. Securities E. C., 113 U.S.App. D.C. 100, 306 F.2d 260 (1962). There, the Court held that the administrative process must be attended "not only with every element of fairness but with the very appearance of complete fairness." (at p. 267). Here, the Hearing Examiner has granted relief to one adversary by allowing it access to 6(b) reports while denying it to the other, with the result, claims plaintiff, that the entire Commission proceeding will be vitiated unless corrected here.

In order to decide ultimately the jurisdictional question, it is necessary to inquire into the facts going to the merits of plaintiff's claim. If we are to follow the precepts set forth above, we must determine whether the acts complained of constitute a breach of a mandatory duty or such a denial of fundamental due process as to compel us to review the Commission's determination. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943); Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

Defendant raises the question of the timeliness of the matter before us. If, as plaintiff contends, it is entitled to 6(b) reports as a matter of right, there is no need to attempt to gain the data sought by means of a conventional subpoena, or, indeed, to exhaust any further administrative procedures. The controversy is ripe for determination now; if

an error has been committed, it must be corrected now.

The relief still available to plaintiff within the administrative process is of interest to us only insofar as it bears on the due process issue. If reasonable and available procedures exist, and are as yet untried by plaintiff, a claim of lack of due process may, indeed, be premature. But, if a statutory mandate has been violated, further Commission action cannot correct it. There is a difference between additional available administrative remedies and the availability of a review procedure where the right to 6(b) reports may ultimately be decided in plaintiff's favor.

■ We have already pointed out that the procedure under 15 U.S.C. § 21(c), allowing the production of additional evidence upon review by the Court of Appeals of a cease and desist order "is not directed to the correction of errors committed by the Commission during its proceedings or at any other time; it is analogous to a motion for a new trial upon newly discovered evidence." Fashion Originators Guild v. Federal Trade Commission, 114 F.2d 80, 82 (2d Cir. 1940). This procedure is clearly not designed to rectify the type of grievous error complained of here.

## VIOLATION OF THE A.P.A.

Plaintiff claims that it is entitled to have special reports, pursuant to 6(b), issued at its request as a matter of right.

Section 6(b) of the F.T.C. Act provides as follows:

"That the Commission shall also have power—

\*   \*   \*   \*   \*   \*

"(b) To require, by general or special orders, corporations engaged in commerce, excepting banks, and common carriers subject to the Act to regulate commerce, or any class of them, or any of them, respectively, to file with the commission in such form as the commission may prescribe annual or special, or both annual and special, reports or answers in writing to specific questions, furnishing to the commission such information as it may require as to the organization, business, conduct, practices, management, and relation to other corporations, partnerships, and individuals of the respective corporations filing such reports or answers in writing. Such reports and answers shall be made under oath, or otherwise, as the commission may prescribe, and shall be filed with the commission within such reasonable period as the commission may prescribe, unless additional time be granted in any case by the commission."

This section, passed in 1914, was not used until 1950 when the Supreme Court upheld its use by the Commission as "a power of inquisition." United States v. Morton Salt Co., 338 U.S. 632, 642, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

■■ The wording of the statute and its legislative history lead us to the conclusion that the exercise of the procedure outlined in 6(b) was reserved exclusively to the F.T.C. in its function as protector of the public interest. There is no indication that this extraordinary power was ever meant to be utilized by a private party to an enforcement proceeding.

This view finds substantiation in portions of legislative historical background. In discussion on the Senate floor leading to the adoption of the Act, Senator Newlands explained that:

"The office of subsection (b) is to get from time to time information, statements, and records concerning the organization, business, financial condition, conduct, practices, management, and relation to other corporations, and so forth, of all corporations subject to the provisions of the bill." (51 Cong.Rec. p. 13303, August 5, 1914).

The Senator had earlier stated:

"The reports which are required are of course thought to be neces-

:sary to carry out the purposes of the .act—that is to say, to give to the ·commission information which may be needed to make the act effective— but the commission may, under sub-·division (b) require any corporation .at any time to furnish it any information that it sees fit to ask for, the ·extent of its request being limited only by its own discretion." (51 Cong.Rec. p. 11182, June 26, 1914).

Instances of a like governmental func·tion, reserved to the agency and not avail.able to private parties, are many. Ex·amples are the power to obtain assistance from other government agencies, 15 U.S.C. § 48; to conduct investigations of ·private files, 15 U.S.C. § 49; to require .statements from sectors of the business community, 15 U.S.C. § 65.

Plaintiff places heavy reliance on the ·opinion of Chief Judge Ryan in United States v. St. Regis Paper Co., 181 F.Supp. 862 (S.D.N.Y.1960). There, however, 6(b) reports were issued at the behest of the Commission, and various items requested in the reports were challenged. The Court held that those portions of the 6(b) report which were valid could be enforced in the District Court, pursuant to Section 6(c) of the A.P.A. On appeal United States v. St. Regis Paper Co., 285 F.2d 607 (2d Cir. 1960), aff'd 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed. :2d 240 (1961)), the use of Section 6(c) ·of the A.P.A. to enforce compliance with ·6(b) orders was upheld.

:Section 6(c) of the A.P.A. provides:

"*Agency subpenas* authorized by law shall be issued to any party upon request and, as may be re·quired by rules of procedure, upon a :statement or showing of general rel·evance and reasonable scope of the evidence sought. Upon contest the court shall sustain *any such subpena or similar process or demand* to the extent that it is found to be in accordance with law and, in any proceeding for enforcement, shall issue an order requiring the appearance of the witness or the production of the evidence or data within a reasonable time under penalty of punishment for contempt in case of contumacious failure to comply." (Emphasis ours).

Since the statute authorizes court enforcement of "any such subpena or similar process," and since the Court in the St. Regis case held that Section 6(b) reports were "similar process," plaintiff argues that any party to an FTC proceeding is entitled to these reports. We cannot agree.

Fatal, we think, to plaintiff's claim is the fact that the first sentence of 6(c), setting forth the process to be issued to any party, mentions *only subpoenas*. The second sentence authorizes court enforcement of subpoenas "or similar process." Had the words "similar process" appeared in the first sentence of 6(c) we might be constrained, on the basis of the St. Regis case, to hold otherwise.

We cannot agree with the contention of plaintiff that " 'Agency subpenas authorized by law' includes *any* compulsory process which is 'authorized by law' to be issued by an agency on its own behalf as a 'party' to an 'agency proceeding.' " (Plaintiff's Main Brief, p. 8).

Indeed, the legislative history of Section 6(c) states that it was designed to " * * * assure that private parties as well as agencies shall have the right to such subpenas." (S.Doc. No. 248, 79th Cong., 2d Sess. (1946), p. 27). Nowhere is it stated, nor can it be reasonably implied, that 6(b) reports are available to private parties to an FTC proceeding, under the guise of subpoenas.

If, as plaintiff contends, the use of 6(b) reports by the Commission as part of its adjudicative (as opposed to its investigative) function demands its use by the adverse party to an FTC proceeding, it is a matter for the legislature to remedy—not the courts.

The language and meaning of the statutes involved are clear. We will not create an ambiguity where none exists, nor will we legislate for the benefit of a litigant.

## DENIAL OF DUE PROCESS

Plaintiff contends that the denial to it of access to 6(b) reports violated its constitutional right of due process of law as well as that concept of fairness necessary to every judicial and quasi-judicial proceeding.

■ While it is probably true that the Commission could not withhold from plaintiff access to evidence which it controlled, the question here is whether they must provide plaintiff with access to special reports to enable it to obtain information *not* otherwise within defendant's control.

Plaintiff characterizes Section 6(b) reports as "compulsory process," thereby equating it with the conventional subpoena, available to it pursuant to Section 9 of the F.T.C. Act. Section 6(b) reports are not mandatorily issued. They are "process" only insofar as they may be enforced in court pursuant to Section 6(c) of the A.P.A. United States v. St. Regis Paper Co., supra. Since these reports are not "compulsory process," should the Commission have issued them here?

Plaintiff points out that the conventional subpoena cannot order the compilation of statistical data, or the filing of reports answering detailed questions. This type of information is, however, obtainable by the use of 6(b) reports.

In order for plaintiff to prevail in this argument, it must be shown that by reason of the Commission's action, plaintiff was denied the right to present its evidence and summon the witnesses of its choice. Cf. United States v. Seeger, 180 F.Supp. 467 (S.D.N.Y.1960). Defendant's action, if it is to be upheld, must have "the very appearance of complete fairness." Amos Treat & Co. v. Securities E. C., 113 U.S.App.D.C. 100, 306 F.2d 260, 267 (1962).

Plaintiff urges that 6(b) reports are the only way it can adequately obtain and compile industry-wide data necessary to rebut defendants' identification of the line of commerce and their analysis and evaluation of the competitive structure of the market, as well as plaintiff's alleged effect upon this structure. We are told that 6001 subpoenas will have to be issued (some 250% more than were used in the ten largest FTC proceedings combined) if the use of 6(b) reports is denied.

■ We are not persuaded by this argument. Under the Rules of Practice (28 Fed.Reg. 7086), a respondent to an FTC proceeding is afforded broad rights of discovery, defense, rebuttal and cross-examination. He is entitled to a pre-hearing discovery conference and depositions (Rule 3.10), requests for admissions (Rule 3.13), subpoenas (Rule 3.17) and depositions on written interrogatories (Rule 3.12). In addition, the Commission has offered to issue subpoenas for plaintiff with an attached questionnaire, similar to a 6(b) report, and to allow the subpoena to be satisfied by answering the questions attached. We regard the offer fair indeed. Due process requires no more.

■ The burden of proving a violation of Section 7 of the Clayton Act is upon the Commission, and we assume that it will be held strictly to its proof by the Hearing Examiner. (Rule 3.14 (a)). Plaintiff's defense in these proceedings may be costly, time consuming and difficult. But the crucial factor is that there has been no denial to plaintiff of evidence or access to it. It has not yet attempted to use any of the discovery procedures available to it, and until it becomes patently clear that existing procedures are inadequate to enable plaintiff to fairly defend itself before the Commission, there has been no violation of the sanctity of the due process guarantees, and we will not intervene—assuredly not by unauthorized methods.

We agree with the statement of the Commission of July 30, 1962 "that the issuance of orders for the filing of Special Reports, as requested by respondent, is not justified in this proceeding and would not be in the public interest; and that

the Commission's Rules of Procedure provide adequate means whereby respondent may obtain from persons or companies not parties to this proceeding any information necessary to its defense." We do not here decide whether the Commission would have the power to issue such reports on behalf of plaintiff, assuming it was so inclined. Federal Maritime Comm. v. Anglo-Canadian Shipping Co., Ltd., 335 F.2d 255 (CA 9th 1964).

█ The affidavits filed in support of defendants cross-motion clearly point up the difficulties, both in terms of time and manpower, incident to obtaining data by 6(b) reports. We will not force the Commission to expend such effort on behalf of plaintiff in the absence of at least some statutory authority or a clear showing of the denial of fundamental due process. Both are lacking here. The administrative process should not be stayed for an extended inquiry into claimed irregularities in the absence of a clearly fundamental defect vitiating the entire proceedings. Securities E. C. v. R. A. Holman & Co., 323 F.2d 284 (D.C.Cir. 1963).

The government, through the various agencies, is charged with the enforcement of numerous statutes. This is indeed a heavy burden, the fulfillment of which makes requisite procedures such as 6(b) so that reports may be made available to these arms of the government. The fact that such reports were issued to counsel for defendants, does not, *a fortiori*, entitle plaintiff to identical relief.

It is implicit from the foregoing that we do not find the Commission action "arbitrary, capricious and biased."

Whenever these procedures are applied or used unfairly, redress may be had by resort to the courts. Here, however, the use of 6(b) reports by defendants, and its denial to plaintiff, in light of the foregoing discussion, constitutes neither unfairness nor a denial of due process.

Plaintiff's motion for summary judgment denied.

Defendants' motion for summary judgment dismissing the complaint is granted.

Settle order promptly on three (3) days notice.