The **SPERRY AND HUTCHINSON COMPANY**, Plaintiff,

v.

The **FEDERAL TRADE COMMISSION**, Paul Rand Dixon, Philip Elman, Mary Gardiner Jones, A. Everette MacIntyre, John R. Reilly, and Walter K. Bennett, Defendants.

**No. 66 Civ. 1506.**

United States District Court
S. D. New York.

June 14, 1966.

**137**

Casey, Lane & Mittendorf, New York City, for plaintiff; Samuel M. Lane, Alan R. Wentzel, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for defendants; Lawrence W. Schilling, Asst. U. S. Atty., Harold D. Rhynedance, Jr., Atty., Federal Trade Commission, of counsel.

OPINION

FREDERICK van PELT BRYAN, District Judge:

This is an action pursuant to 28 U.S.C. §§ 1361 and 2201 for a declaratory judgment and relief in the nature of mandamus against the Federal Trade Commission. It concerns an adjudicative proceeding pending before the Commission in which plaintiff The Sperry and Hutchinson Company (Sperry) is the respondent.[1]

Sperry has now moved for a temporary injunction restraining the Commission from going forward with the initial hearing in the adjudicative proceeding scheduled to commence on June 15, 1966, unless and until various documents which have been requested and are allegedly crucial to the defense are produced. The complaint seeks permanent relief of the same nature and a direction that the Commission furnish the documentary material requested.

Sperry is a New Jersey corporation with its principal place of business in New York. In addition to the Commission, the present Commission members and the Hearing Examiner assigned to the adjudicative proceeding against Sperry are named as defendants.

Federal question jurisdiction is asserted under 28 U.S.C. § 1331, and 28 U.S.C. §§ 1337 and 1361.

FACTS

The basic facts are not in dispute. Sperry is, and for the past 66 years has been, engaged in the trading stamp business. It is said to be the largest and oldest company so engaged. In carrying on its business Sperry uses a form writ-

1. In the Matter of The Sperry and Hutchinson Company, F.T.C. Dkt. No. 8671 (Nov. 15, 1965).

ten agreement whereby it licenses retail merchants to issue trading stamps to their customers at the rate of one stamp for every ten cents paid by the customer to the retail licensee. The customer pastes the stamps in books provided by Sperry and, when one or more books have been filled, may surrender the stamps to Sperry for redemption in merchandise or cash. Sperry redeems stamps only upon presentation of a full book of 1,200. Transfer of stamps by recipients to others without Sperry's consent is forbidden. This is said to be done primarily to induce customers to continue to patronize Sperry's retail licensees.

Over the years Sperry has also had considerable success in preventing unauthorized trafficking in its stamps by brokers and trading stamp exchanges through judicial proceedings in the state courts.

Sperry's business is national in scope. The retail establishments issuing its stamps are non-competitive within the particular communities they serve. They now number more than 70,000 and are located in all of the 49 continental states with the exception of Kansas and Alaska.

Since September 1962 the Commission has been conducting a formal investigation of Sperry's operations. In the course of the investigation Sperry has cooperated with the Commission in various ways. It has furnished a large volume of documentary material, including confidential economic studies and reports. During the investigation the Commission through compulsory process has also obtained a great number of documents and statements from third parties. In addition, the Commission's Bureau of Economics has prepared an economic study and analysis of the trading stamp industry. This study has apparently been made available to the staff of the

National Commission on Food Marketing, but has not yet been disclosed to the public or to Sperry.

On November 15, 1965, the Commission on the basis of its investigation commenced the proceeding against Sperry with which we are concerned here. The complaint alleges in substance that by limiting the issuance of its stamps to one for every ten cents paid to the licensees (Counts I and II), and by suppressing trading stamp brokers and exchanges (Count III), Sperry, alone and in combination with others, violated § 5 (a) (1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (1).

After answer Sperry moved before the Hearing Examiner pursuant to Rule 3.11 of the Commission's Rules of Practice for Adjudicative Proceedings, 16 C.F.R. § 3.11,[2] for far-reaching discovery and inspection of a mass of statements and documents accumulated by the Commission in the period from the commencement of its investigation in September 1962 to the present. The motion for discovery was in broad and general terms, covered a wide range of the subject matter embraced in the complaint, and in essence sought to have a substantial portion of the Commission's files on this subject matter opened to the respondent.

The material sought falls into five general categories:

(1) "All written statements, communications or other documents" received by the Commission from third parties relating to the subject matter of the complaint;

(2) "All written inquiries or communications made" by the Commission to which the documents previously referred to were responsive;

(3) "All written statements, communications or other documents" con-

2. This rule provides: "Upon motion of any party showing good cause therefor and upon such notice as the hearing examiner may provide, the hearing examiner may order any party to produce and permit the inspection and copying of non-privileged documents, papers, books, or other physical exhibits which constitute

or contain evidence relevant to the subject matter involved and which are in the possession, custody or control of such party. The order shall specify the time, place, and manner of making the inspection and taking the copy and may prescribe such terms and conditions as the circumstances require."

taining information relevant to the subject matter received by the Commission from "any person, firm or corporation who will testify at hearing on behalf of complainant or concerning whom complainant will offer documentary evidence at hearing";

(4) All portions of depositions taken relating to the subject matter of the complaint; and

(5) "All preliminary, interim and final studies and reports" made by the Commission's Bureau of Economics and its economists relating to the effect on prices, price structure and competition, of the use of bonus, double or multiple trading stamps. In addition the motion called for the continuous production of additional material as received.

The motion was opposed by counsel supporting the complaint. On February 3, 1966 Hearing Examiner Bennett certified Sperry's motion to the Commission with a recommendation that Sperry should be given access to a limited number of the documents sought, but that the motion should otherwise be denied. He pointed out that according to the pretrial schedule already set up a number of documents would be supplied to Sperry, including all those on which the complainant would rely to establish its case; that in the main Sperry had not shown the necessity for the very broad access to the Commission's files which it sought; but that additional items such as complaints and explanations by customers of third parties, records kept in the regular course of business, and documents "evidencing the existence or effect of the alleged conspiracy," as well as inquiries necessary to limit or identify such documents, should be produced.

On April 15 the Commission denied plaintiff's motion in its entirety on the grounds that the Commission's records to which Sperry sought such general access were largely confidential and that in any event all documents which were necessary for the presentation of the defense could be supplied during the course of the normally scheduled pre-trial proceedings, or, if necessary, during the course of the trial itself. Commissioner Elman dissented as to the denial of Sperry's request for the production of the report of the Commission's Bureau of Economics as distinguished from preliminary and interim economic studies.

Thereafter in the course of the regularly scheduled pre-trial proceedings the Commission made available to Sperry some 400 documents on which it will rely to establish its case. Presumably these were among the items covered by Sperry's original motion for discovery.

On May 24, 1966 the plaintiff commenced the present action seeking a direction from this court that the Commission produce all of the material requested in its original motion for discovery and inspection, and an injunction restraining the Commission from taking any further steps in the adjudicative proceeding until the documents were produced, and an opportunity was afforded to Sperry to copy and inspect them and otherwise prepare its defense.

The hearing in the adjudicative proceeding originally set for May 31 was successively adjourned to June 7 and then to June 15 when it is now scheduled to begin. This motion for a preliminary injunction was made on June 3.

 Since one of the requirements for the issuance of a temporary injunction is that plaintiff demonstrate "at least a probability of success at the plenary hearing," Rothstein v. Manuti, 235 F.Supp. 48, 50 (S.D.N.Y.1964), it is appropriate here to examine the merits of the claims.

Sperry contends in substance that it has suffered and will suffer irreparable damage because the Commission's denial of its application for discovery and inspection (1) violated due process by suppressing evidence essential to its defense, U.S.Const., Amend. V; and (2) contravened §§ 7(c) and 12 of the Administrative Procedure Act by depriving Sperry of a right to equal access to material evidence, 5 U.S.C. §§ 1006(c), 1011.

The issue thus presented is whether in the circumstances here the court should intervene to review, at an interlocutory stage, the Commission's denial of a motion for the production of evidence for use in a hearing yet to be commenced.

## I.

■ Interference with the conduct of proceedings before an administrative agency, through the equity powers of the court, as distinguished from supervision and control by direct review, has long been the exception rather than the rule. The exercise of the court's general equity jurisdiction to correct agency conduct "in excess of its delegated powers and contrary to a specific prohibition of the Act"—a practice sanctioned by Leedom v. Kyne, 358 U.S. 184, 188, 79 S.Ct. 180, 184, 3 L.Ed.2d 210 (1958)—has been significantly restricted in recent years. Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); see, e. g., McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 16, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); Consolidated Edison Co. of New York v. McLeod, 302 F.2d 354 (2 Cir. 1962).

■ Accordingly, as a prerequisite to judicial intervention—at least where preliminary matters are involved—the cases have consistently required a showing of a patent violation of constitutional or statutory authority by the agency, as well as an absence of an alternative avenue of relief to the injured party. E. g., Local 130, International Union of Electrical, etc., Workers v. McCulloch, 345 F.2d 90 (D.C.Cir.1965) (McGowan, J.); Long Island R. R. Co. v. United States, 193 F.Supp. 795 (E.D.N.Y.1961) (Friendly, J.).

■ The reason for judicial reluctance to authorize interference with preliminary and procedural determinations of an administrative agency stems from several considerations. Resort to the courts threatens undue protraction of the administrative proceedings. See Federal Power Comm'n v. Metropolitan Edison Co., 304 U.S. 375, 383–384, 58 S.Ct. 963, 82 L.Ed. 1408 (1938). The specialized and complex nature of administrative problems, requiring the commitment of their solution in the first instance to the processes of the agency, leads to reluctance to tamper with normal agency processes and procedures. See 1 Davis, Administrative Law § 8.03 (1958). Thus agency refusals to accede to demands for the production of information in pending proceedings consistently have withstood interlocutory attack in the courts. Texaco, Inc. v. Federal Power Comm'n, 117 U.S.App.D.C. 268, 329 F.2d 223, cert. den., 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963); Texaco, Inc. v. Federal Trade Comm'n, 301 F.2d 662 (5 Cir. 1962) (per curiam); R. H. Macy & Co. v. Tinley, 249 F.Supp. 778 (D.D.C.1966); Indiana & Michigan Elec. Co. v. Federal Power Comm'n, 224 F.Supp. 166 (N.D.Ind.1963).[3] It has been said unequivocally that "administrative orders of a merely preliminary or procedural character are not directly or immediately reviewable * * *." Eastern Utilities Assoc. v. Securities & Exchange Comm'n, 162 F.2d 385, 386 (1 Cir. 1947). Indeed, § 10(c) of the Administrative Procedure Act, 5 U.S.C. § 1009(c), provides in essence that "any preliminary, procedural or intermediate agency action" not otherwise reviewable may be scrutinized by the courts only "upon the review of the final agency action." The case law prior to the passage of the Administrative Procedure Act was consistent with this provision. Thus "an order regulating only the subsequent course of the proceeding—such as an order instituting a hearing, refusing to remove a trial examiner, or granting a continuance—was usually denied immediate review * * *."[4]

---

3. See also Fashion Originators Guild v. Federal Trade Comm'n, 114 F.2d 80, 83 (2 Cir. 1940), aff'd, 312 U.S. 457, 61 S. Ct. 703, 85 L.Ed. 949 (1941) ("the court shall have no jurisdiction over the proceedings until the Commission has concluded the case.") (Hand, J.)

4. Note, Direct Judicial Review Under Section 10(c) of the Administrative Pro-

It is unnecessary here to explore fully the many competing considerations which may justify a court in characterizing a particular agency determination as "procedural" or "non-final" and thus non-reviewable. See Whitney Nat'l Bank, etc. v. Bank of New Orleans & Trust Co., 379 U.S. 411, 422–423, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). See generally 3 Davis, Administrative Law § 20.05 (1958). But one of these considerations no doubt is that "insistence on finality and prohibition of piecemeal review discourage undue litigiousness and leaden-footed administration of justice." Cf. Di Bella v. United States, 369 U.S. 121, 124, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962). As a general rule, therefore, "before the courts can be called upon, the preliminary sifting process provided by the statutes must be gone through." United States v. Sing Tuck, 194 U.S. 161, 170, 24 S.Ct. 621, 624, 48 L.Ed. 917 (1906).

In the present circumstances Congress has provided that review of the actions of the Federal Trade Commission is to be routed directly to the courts of appeals, 15 U.S.C. §§ 45(c), (d). Under that provision any derelictions of the Commission to the prejudice of the respondent can be rectified in the regular course of review. See, e. g., Fresh Grown Preserve Corp. v. Federal Trade Comm'n, 125 F.2d 917 (2 Cir. 1942). Accordingly, this court must decide whether Sperry has established a case for departure from normal review channels.

Sperry relies heavily upon § 10(d) of the Administrative Procedure Act, 5 U.S.C. § 1009(d), which authorizes interim relief under certain circumstances to "prevent irreparable injury pending judicial review." [5] But this provision does not change the issue here. For under § 10(c), 5 U.S.C. § 1009(c), judicial review is made available only for "every *final* agency action," provided *"there is no other adequate remedy in any court."* (Emphasis added.)

The question remains whether Sperry will be subjected to irreparable injury which cannot be corrected in the normal process of review by the Court of Appeals, or, indeed, during the subsequent course of the administrative proceedings. Thus for purposes of this motion unless there is a showing of a "substantiality of present or immediate harm," Toilet Goods Ass'n v. Gardner, 360 F.2d 677, 685 (2 Cir. April 13, 1966), viewed in light of the remedies available at the hearing, review in this court of the administrative action assailed here will be precluded, as it would be under similar circumstances in the court of appeals. Compare Leedom v. Kyne, supra, with Toilet Goods Ass'n v. Gardner, supra. See also Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958); Isbrandtsen Co. v. United States, 93 U.S. App.D.C. 293, 211 F.2d 51, cert. den., 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954).

The test to be applied is not whether the plaintiff's demands upon the Commission might be considered reasonable in some respects or whether the court might have reached a different conclusion with respect to them. Rather, as pointed out, the standard is whether the Commission has stepped plainly beyond the bounds of its statutory authority, or has acted in clear defiance of Sperry's constitutional rights to its irreparable

cedure Act, 62 Harv.L.Rev. 1216, 1219–20 (1949), citing inter alia, Phillips v. Securities Exchange Comm'n, 171 F.2d 180, 183 (2 Cir. 1948); Okin v. Securities and Exchange Comm'n, 143 F.2d 960 (2 Cir. 1944).

5. This section states: "Pending judicial review any agency is authorized, where it finds that justice so requires, to postpone the effective date of any action taken by it. Upon such conditions as may be required and to the extent necessary to prevent irreparable injury, every reviewing court (including every court to which a case may be taken on appeal from or upon application for certiorari or other writ to a reviewing court) is authorized to issue all necessary and appropriate process to postpone the effective date of any agency action or to preserve status or rights pending conclusion of the review proceedings."

damage. See Local, 130 Electrical Workers v. McCulloch, supra; Long Island Rd. v. United States, supra.[6]

Sperry's appeal to this court for relief from the Commission's denial of discovery during the pre-trial stages of the adjudicative proceeding must be scrutinized in light of this background of legislative and judicial reluctance to permit premature interference with procedural or "non-final" administrative determinations.

## II.

There is no question that due process requires the prosecution in a criminal case to disclose evidence in its possession which may be helpful to the accused. E. g., Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States ex rel. Meers v. Wilkens, 326 F.2d 135 (2 Cir. 1964). Presumably, the essentials of due process at the administrative level require similar disclosures by the agency where consistent with the public interest. In civil actions, also, the ultimate objective is not that the Government "shall win a case, but that justice shall be done." Campbell v. United States, 365 U.S. 85, 96, 81 S.Ct. 421, 427, 5 L.Ed.2d 428 (1961) (criminal case).

However, the case at bar does not involve this principle. Both the relief sought in the complaint and that

sought on the present motion is predicated on the supposition that the hearing must necessarily be delayed until Sperry is granted access to all the material it seeks. However, Sperry ignores the fact that at the hearing the examiner, as the proof unfolds, is fully empowered to compel the production of any material which is essential to Sperry's defense. 16 C.F.R. §§ 3.10–3.17 (1965). Obviously, this court

"cannot assume in advance of a hearing that a responsible executive official of the Government will fail to carry out his manifest duty. Our conclusion on the point is that the plaintiffs must await the event rather than attempt to anticipate it." National Lawyers Guild v. Brownell, 96 U.S. App.D.C. 252, 225 F.2d 552, 555 (D.C. Cir. 1955), cert. den., 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956).

Moreover, the decision of the Commission to deny Sperry blanket discovery at this stage was not arbitrary and capricious. It was based in substantial measure by balancing the necessity of allowing Sperry wide—if not complete—access to the Commission's files against the desirability of preventing the disclosure of information made confidential in the public interest by Commission Rule.[7] The Commission apparently felt that the balance was weighted against Sperry in view of the very broad nature

---

6. The cases of Union Bag-Camp Paper Corp. v. Federal Trade Comm'n, 233 F. Supp. 660 (S.D.N.Y.1964), and Knoll Associates, Inc. v. Dixon, 232 F.Supp. 283 (S.D.N.Y.1964), relied upon heavily by Sperry are not inconsistent with this view. In *Union Bag* Judge Cooper, acting under the assumption that the court had jurisdiction, nevertheless found that the Commission's refusal to issue various special reports at plaintiff's request was not a "clearly fundamental defect vitiating the entire proceedings." 233 F.Supp. at 667. In *Knoll Associates*, where mandamus jurisdiction was based upon 28 U. S.C. § 2361, Judge Cooper denied a motion for a preliminary injunction and granted a cross-motion to dismiss the complaint, because allegations as to the derelictions of the Commission found "no

support throughout the entire record." 232 F.Supp. at 286.

7. 16 C.F.R. § 1.133(a) provides: "The records and files of the Commission, and all documents, memoranda, correspondence, exhibits, and information of whatever nature, other than the documentary matters described in § 1.132, coming into the possession or within the knowledge of the Commission or any of its officers or employees in the discharge of their official duties, are confidential. Except to the extent that the disclosure of such material or information is specifically authorized by the Commission or to the extent that its use may become necessary in connection with adjudicative proceedings, they may be disclosed, divulged, or produced for inspection or copying only under the procedure set forth in § 1.134."

of its demands, and the absence of any real showing of good cause.[8]

In addition, on the present motion this court is in no position to assess the necessity vel non of requiring the production of the mass of materials of various types which Sperry seeks, even less to determine which documents, if any, it should or should not have. The papers before me certainly do not furnish a basis for such an evaluation. The circumstances here are an example of why Congress was prompted to place the responsibility for determination of procedural questions in the hands of the agency. As was said in Chicago Automobile Trade Ass'n v. Madden, 328 F.2d 766, 769 (7 Cir.), cert. den., 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964):

> "the principle which requires administrative finality as a prerequisite to judicial review has particular force where, as here, the interlocutory order sought to be reviewed relates to the agency's case-handling procedures."

Finally, if access to any essential material should eventually be denied, the court of appeals charged with the responsibility for review of the Commission's final determination, measuring such denial against the background of the proceeding in the round, can take necessary measures to correct any injustice which may have been done. In the circumstances the provisions for the normal channels of review to the courts of appeals afford Sperry adequate remedies. See R. H. Macy & Co. v. Tinley, supra; 15 U.S.C. § 45(d).

Sperry has not shown that it has been "denied the right to present its evidence," Union Bag-Camp Paper Corp. v. Federal Trade Comm'n, supra, or that the Commission is suppressing evidence essential to its defense. Sperry's conclusory allegations to this effect do not elevate a denial of a motion for discovery during the pre-trial stages of the ad-judicative proceeding to the level of a deprivation of a constitutional right. See Securities & Exchange Comm'n v. R. A. Holman & Co., 116 U.S.App.D.C. 279, 323 F.2d 284 (D.C.Cir. 1963); United States v. Manhattan Brush Co., 38 F.R.D. 4 (S.D.N.Y.1965).

### III.

Sperry also claims that the Commission's denial of its motion for discovery contravenes statutory rights guaranteeing access to material evidence under §§ 7(c) and 12 of the Administrative Procedure Act. 5 U.S.C. §§ 1006 (c), 1011.

I cannot agree. Section 7(c) provides simply that "every party shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." These rights certainly do not extend to an unlimited privilege to examine all the Commission's files, which in essence is what Sperry seeks. As previously pointed out, there has been no showing here that Sperry will be denied any rights to present its defense and this court is in no position to find that Sperry is likely to be deprived of essential material at what will undoubtedly be a lengthy hearing yet to be commenced.

Section 12 adds little to Sperry's argument. This provision states that *"except as otherwise required by law,* all requirements or privileges relating to evidence or procedure shall apply equally to agencies and persons." (Emphasis added.) By no means can it be said that the Commission has plainly flouted this open-ended legislative direction.

Such "equal" rights of access to evidence as Sperry may have under this provision are by no means unqualified. As the statute indicates these rights are plainly subject to the protections against

---

8. It may also be noted that the very broad discovery which Sperry seeks before the Commission would not be granted in this court under the discovery provisions of the Federal Rules of Civil Procedure in the absence of very extraordinary circumstances which have not been shown here.

disclosure of confidential information required by the Commission's rules. It was primarily for this reason that the Commission denied Sperry's motion.

Moreover, even assuming there is a statutory right of "equal" access to evidence, it could scarcely be said to require such access at any particular time or at any particular stage in the proceeding. Nor would it include access to any evidence which is not shown to be necessary to the defense. There is no showing here that access to any such material will necessarily be denied in this adjudicative proceeding.

It is true that the Commission has had facilities for investigation not available to a private litigant, as is customarily the case with Government agencies. But to hold, as Sperry urges, that a respondent is therefore entitled to what appears to be tantamount to a complete disclosure of the Commission's files would be to fashion a new rule in administrative proceedings of very wide implications which would not be in the public interest. No authority has been cited to me which approves such a rule and I know of none.

Accordingly, plaintiff has not demonstrated any clear violation of its statutory rights by the Commission or any compelling necessity for departure from the normal channels of administrative procedure and ultimate review by the court of appeals.

Assuming jurisdiction under 28 U.S.C. §§ 1331, 1337 and 1361, I conclude that Sperry has not satisfied the essential requirements for preliminary injunctive relief:

1. There does not appear to be substantial likelihood that plaintiff will ultimately prevail on the merits. See Hall Signal Co. v. General Ry. Signal Co., 153 F. 907 (2 Cir. 1907); Bernstein v. Herren, 136 F.Supp. 493, 499 (S.D.N.Y. 1956).

2. Sperry has made no showing of irreparable injury if injunctive relief is not granted. Behre v. Anchor Ins. Co., 297 F. 986, 989 (2 Cir. 1924); Local 453, International Union of Electrical, etc., Workers v. Otis Elevator Co., 201 F.Supp. 213 (S.D.N.Y.1962); see Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 104 U.S.App.D.C. 106, 259 F.2d 921 (D.C.Cir.1958). There will be numerous opportunities as the hearing progresses for Sperry to obtain access to any material essential to its defense. It cannot be assumed, for example, that where one letter in a chain of correspondence is offered the remainder of such correspondence will not be made available as it plainly should be. Nor can it be assumed that when specific issues of fact are posed the Commission will not in good faith make available to Sperry any evidentiary material which lends support to Sperry's position on such issues.[9]

Finally, the expense and time, even of great magnitude, required to defend an administrative proceeding of this nature which might require retrial if reversed on review, is not the sort of irreparable injury against which equity will protect. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); Petroleum Exploration, Inc. v. Public Service Comm'n, 304 U.S. 209, 221–222, 58 S.Ct. 834, 82 L.Ed. 1294 (1958).

3. It has not been demonstrated that the denial of the motion to produce will infringe upon any clear legal rights of the plaintiff. See United Gas Corp. v. Pennzoil Co., 248 F.Supp. 449 (S.D.N.Y. 1965), aff'd per curiam, 354 F.2d 1002 (2 Cir. 1965).

4. Balancing the equities in this case, as I must, see Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944), it does not appear that Sperry is entitled to preliminary injunctive relief.

The motion for a preliminary injunction is therefore in all respects denied.

---

9. Nor can the possibility be excluded that Sperry will ultimately succeed on the merits before the Commission. See Indiana & Michigan Elec. Co. v. Federal Power Comm'n, 224 F.Supp. 166, 170 (N.D.Ind.1963).